**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAY RUSSELL SHAFER, *Plaintiff-Appellee*, v. COUNTY OF SANTA BARBARA; BILL BROWN, individually and as Sheriff of Santa Barbara County; SANTA BARBARA SHERIFF'S DEPARTMENT, *Defendants*, and FREDDY PADILLA, No. 2465, individually and as a peace officer, *Defendant-Appellant.* | No. 15-56548 D.C. No. 2:11-cv-08110-FMO-FFM OPINION |

Appeal from the United States District Court
for the Central District of California
Fernando M. Olguin, District Judge, Presiding

Argued and Submitted April 6, 2017
Pasadena, California

Filed August 29, 2017

Before:  Milan D. Smith, Jr. and N. Randy Smith, Circuit
Judges, and Gary Feinerman.[*]

Opinion by Judge N.R. Smith

## SUMMARY[**]

### Civil Rights

The panel reversed a jury verdict and vacated damage awards in favor of the plaintiff in an action brought under 42 U.S.C. § 1983 alleging that a police officer used excessive force when he used a leg sweep maneuver to take down the plaintiff after he refused to comply with the officer's orders to drop the water balloons he was carrying.

The panel held that viewing all of the facts in the light most favorable to the jury's verdict, there was sufficient evidence to support the jury's finding that the force used by the officer was excessive. The panel nevertheless held that the officer was entitled to qualified immunity because, at the time the incident occurred, the law was not clearly established that an officer cannot progressively increase his use of force from verbal commands, to an arm grab, and then a leg sweep maneuver when a misdemeanant refuses to comply with the officer's orders and resists, obstructs, or delays the officer in

---

[*] The Honorable Gary Feinerman for the Northern District of Illinois, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

his lawful performance of duties such that the officer has probable cause to arrest him in a challenging environment.

## COUNSEL

Mary Pat Barry (argued), Senior Deputy; Michael C. Ghizzoni, County Counsel; Office of County Counsel, Santa Barbara, California; for Defendant-Appellant.

Steven B. Stevens (argued), Los Angeles, California; Thomas E. Beck, The Beck Law Firm, Los Alamitos, California; for Plaintiff-Appellee.

## OPINION

N.R. SMITH, Circuit Judge:

College student Jay Russell Shafer refused to drop water balloons at the request of Santa Barbara Sheriff's Deputy Freddy Padilla. Deputy Padilla then used a leg sweep maneuver to take down and arrest Shafer. Shafer sued Deputy Padilla, asserting violations of his constitutional rights under 42 U.S.C. § 1983. Deputy Padilla asserted the defense of qualified immunity.

The jury found that Deputy Padilla violated Shafer's Fourth Amendment constitutional right to be free from excessive force. The evidence adduced at trial was sufficient to sustain the jury's verdict. However, Deputy Padilla is entitled to qualified immunity, because, at the time this incident occurred, the law was not clearly established that an officer cannot progressively increase his use of force from

verbal commands, to an arm grab, and then a leg sweep maneuver when a misdemeanant refuses to comply with the officer's orders and resists, obstructs, or delays the officer in his lawful performance of duties such that the officer has probable cause to arrest him in a challenging environment.

## I. BACKGROUND

Students from the University of California, Santa Barbara ("UCSB") commonly congregate on Del Playa Drive, a street near the university campus. On October 4, 2009, hundreds to thousands of intoxicated students congregated on Del Playa Drive. There was loud music playing, and students were yelling, screaming, and running around.

Deputy Padilla and Sheriff's Deputy Todd LeFemine were on patrol that night on Del Playa Drive. Shortly after midnight, four students approached the deputies and said that they had just been hit with water balloons. This complaint caused Deputy Padilla concern, because water balloons had been a serious problem on Del Playa Drive and could cause injuries or start fights. Within one minute of hearing this report, Deputy Padilla identified two males—Shafer and his friend Domenico Gianola—walking with water balloons in their hands. The deputies approached Shafer and Gianola, and Deputy Padilla ordered them to drop the balloons. Gianola dropped his balloons, but Shafer did not. Instead, Shafer asked Deputy Padilla three or four times why he could not hold the balloons. Deputy Padilla continued to order Shafer to drop the balloons but did not answer Shafer's questions.

What happened next is disputed. According to Shafer, Deputy Padilla aggressively grabbed him by the arm and pulled him toward the curb. Shafer attempted to maintain his

footing, but Deputy Padilla swung him toward the sidewalk. Shafer never tried to break free of Deputy Padilla's hold and never resisted Deputy Padilla. Once Deputy Padilla and Shafer reached the sidewalk, Deputy LeFemine grabbed Shafer's other arm. Deputy Padilla kicked Shafer's feet out from under him, and Shafer fell face first onto the pavement. The officers piled on top of him.[1] Shafer felt a knee go into his back and a boot push his head into the pavement. One of the officers handcuffed Shafer. The deputies pulled Shafer to his feet and informed him that he was going to jail. Shafer received a minor abrasion on his face and a bruise on his back as a result of the takedown.

Deputy Padilla's version of the events is much different. He testified that after Shafer refused to drop the water balloons, Shafer attempted to walk past him. Deputy Padilla grabbed Shafer's arm and escorted him approximately ten feet to the curb. Shafer resisted Deputy Padilla's grasp by pulling his arm away from Deputy Padilla. When they got to the curb, Deputy Padilla guided Shafer to sit on the curb by applying pressure to Shafer's arms. Once Shafer sat on the curb, Deputy Padilla let go of Shafer. Instantly, Shafer attempted to stand up and run away from Deputy Padilla. Deputy Padilla quickly reached out and grabbed Shafer. Deputy LeFemine, who was on Shafer's other side, also reached out and grabbed Shafer. The momentum took Shafer, Deputy Padilla, and Deputy LeFemine to the ground. Shafer put his hands underneath his body and continued to try to get up. In an attempt to control Shafer, Deputy Padilla applied body weight pressure between Shafer's torso and legs. Two UCSB campus officers, Jeff Lupo and Christina Rauchhaus,

---

[1] Shafer testified that four officers were involved in the takedown, but could not identify any of the officers except Deputy Padilla.

witnessed this struggle and ran from the other side of the street to provide assistance. To control Shafer, Officer Raucchaus put her knee into Shafer's back and handcuffed him, and Officer Lupo applied pressure to Shafer's legs. After one of the officers handcuffed Shafer, they quickly pulled him off the ground. Deputy Padilla told Shafer that he was going to jail.

Trial testimony from the other witnesses varied slightly. However, the testimony was generally consistent that Deputy Padilla used a leg sweep maneuver to take down Shafer and Shafer resisted Deputy Padilla.

## II.  PROCEDURAL HISTORY

Shafer filed suit against Defendants pursuant to 42 U.S.C. § 1983. The district court dismissed all of the Defendants from the suit except for Deputy Padilla. Before trial, Deputy Padilla filed, and the district court denied, a motion for qualified immunity. Shafer proceeded to trial on his claims against Deputy Padilla for (1) false arrest; (2) malicious prosecution; (3) violation of his First Amendment rights; and (4) violation of his Fourth Amendment rights. Before the jury's deliberation, Deputy Padilla filed a motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. The district court denied the motion.

The jury exonerated Deputy Padilla on every claim except the Fourth Amendment claim for using excessive force. Specifically, the jury found that Deputy Padilla had probable cause to arrest Shafer for violations of California Penal Code section 148. The jury also found that Shafer's speech was not a substantial or motivating factor for Deputy Padilla's actions

against Shafer and that Deputy Padilla did not maliciously prosecute Shafer. As to Shafer's Fourth Amendment claim, the jury found that Deputy Padilla used excessive force against Shafer and that Deputy Padilla "acted with malice, oppression, or in reckless disregard" of Shafer's rights. The jury awarded Shafer $45,000 in economic damages and $75,000 in non-economic damages, but did not award punitive damages.

Deputy Padilla renewed his motion for judgment as a matter of law based on qualified immunity or, in the alternative, insufficient evidence of excessive force. He moved in the alternative for a new trial. Deputy Padilla also argued the district court erred by admitting prejudicial evidence.[2] The district court denied the motions, and Deputy Padilla now appeals those decisions.

## III.  DISCUSSION

We review de novo a district court's qualified immunity determination denying judgment as a matter of law. *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014). "In doing so, we 'view all evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in favor of the non-mover, and disregard all evidence favorable to the moving party that the jury is not required to believe.'" *Id.* (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008)). A motion for judgment as matter of law may be granted if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party

---

[2] Because we hold Deputy Padilla is entitled to qualified immunity, we need not determine whether the district court erred by admitting prejudicial evidence.

on that issue," Fed. R. Civ. P. 50(a)(1), that is, "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Conversely, "[i]f reasonable minds could differ as to the import of the evidence," the motion should be denied. *Id.* at 250–51. Because this appeal comes after the jury's verdict, we must "construe the facts in the light most favorable to the jury's verdict." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1064 n.1 (9th Cir. 2016); *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1245 (9th Cir. 2014). In this case, the jury's verdict was split. Thus, we draw all factual inferences and resolve all issues of credibility in favor of the jury's findings that Deputy Padilla had probable cause to arrest Shafer for resisting, delaying, or obstructing Deputy Padilla; that Shafer's protected speech was not a substantial or motivating factor for Deputy Padilla's actions; that Deputy Padilla did not maliciously prosecute Shafer; and that Deputy Padilla used excessive force against Shafer.

Qualified immunity affords limited protection to public officials faced with liability under 42 U.S.C. § 1983, "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether qualified immunity applies in a given case, we must determine: (1) whether a public official has violated a plaintiff's constitutionally protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation. *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 788 (9th Cir. 2016) (en banc). These two prongs of the analysis need not be considered in any particular order, and both prongs must be satisfied for a plaintiff to overcome a qualified immunity

defense. *See Pearson*, 555 U.S. at 236. We now examine both prongs of the analysis to determine whether Deputy Padilla is entitled to qualified immunity.

## A. Prong One: Constitutional Violation

The first prong under the qualified immunity test determines whether Deputy Padilla violated Shafer's constitutional right. The jury found that Deputy Padilla violated Shafer's Fourth Amendment right to be free from excessive force. Deputy Padilla challenges the sufficiency of the jury's verdict as to this claim.

Excessive force claims are founded on the Fourth Amendment right to be free from unreasonable seizures of the person. *See* U.S. Const. amend. IV; *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). The Fourth Amendment is implicated where an officer exceeds the bounds of reasonable force in effecting "an arrest, investigatory stop, or other seizure." *Graham*, 490 U.S. at 395–96. We analyze excessive force claims according to the constitutional touchstone of objective reasonableness, so we do not consider an officer's subjective "intent or motivation." *Id.* at 397. Instead, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* This determination requires us to balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (quotation marks and citations omitted). To do this, we weigh three non-exclusive factors: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting

arrest or attempting to evade arrest by flight." *Id.* We judge the reasonableness of the force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *id.* at 396, because "officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation," *id.* at 397.

We consider each of the *Graham* factors in turn to assess whether a reasonable jury could have found Deputy Padilla's conduct to be excessive under the circumstances that he faced. As to the severity of the crime involved, Deputy Padilla initiated contact with Shafer based on a report that someone had thrown water balloons at four individuals. Approximately one minute later, Deputy Padilla saw Shafer walking with water balloons in his hands. Deputy Padilla argues that, based on this information, Shafer was suspected of committing a battery, which is a crime of violence. Deputy Padilla eventually arrested Shafer for resisting, obstructing, or delaying a peace officer. *See* Cal. Penal Code § 148. Although Deputy Padilla was entitled to use some degree of force in executing Shafer's arrest, *Graham*, 490 U.S. at 396, the jury could conclude, based on the fact that Shafer was suspected of committing only a misdemeanor, that Deputy Padilla's leg sweep maneuver was excessive under the circumstances.

As to the threat Shafer posed, he never made any verbal threats toward Deputy Padilla. Shafer was noncompliant in following Deputy Padilla's orders and he did resist, obstruct, or delay Deputy Padilla when Deputy Padilla lawfully arrested Shafer. In light of the surrounding circumstances, Shafer's actions presented some threat to Deputy Padilla.

However, the jury could conclude (based on Shafer's testimony) that Shafer did not say anything threatening to Deputy Padilla, and that any threat perceived by Deputy Padilla was not "immediate" or significant enough to justify a leg sweep maneuver.

As to whether Shafer was actively resisting arrest or attempting to evade arrest by flight, the jury's verdict on probable cause to arrest under California Penal Code section 148 makes clear that Shafer willfully resisted, obstructed, or delayed Deputy Padilla during his execution of Shafer's arrest.

Viewing all of the facts in the light most favorable to the jury's verdict, there is sufficient evidence to support the jury's verdict that the force used by Deputy Padilla was excessive. The evidence presented was far from "one-sided," *Anderson*, 477 U.S. at 252, and did not give rise to "but one reasonable conclusion as to the verdict," *id.* at 250.

## B.  Prong Two: Clearly Established Law

Deputy Padilla may nonetheless be entitled to a qualified immunity defense if Shafer's Fourth Amendment rights were not clearly established at the time Deputy Padilla committed the violation. *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam); *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)*.* For a right to be clearly established, case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law. *See White*, 137 S. Ct. at 551 (explaining that "existing precedent must have placed the statutory or constitutional question beyond debate . . .

[because] immunity protects all but the plainly incompetent or those who knowingly violate the law" (internal quotation marks and citation omitted)); *Dunn v. Castro*, 621 F.3d 1196, 1199–1200 (9th Cir. 2010).

We begin our inquiry into whether this constitutional violation was clearly established by defining the law at issue in a concrete, particularized manner. *See White*, 137 S. Ct. at 552; *al-Kidd*, 563 U.S. at 743 (noting the Supreme Court has repeatedly warned lower courts "not to define clearly established law at a high level of generality"). We consider this question in light of the jury's findings that Deputy Padilla had probable cause to arrest Shafer for resisting, obstructing, or delaying arrest; that Shafer's protected speech was not a substantial or motivating factor for Deputy Padilla's actions; that Deputy Padilla did not maliciously prosecute Shafer; and that Deputy Padilla used excessive force against Shafer. Defined at an appropriate level of specificity, the question at hand is whether an officer violates clearly established law when he progressively increases his use of force from verbal commands, to an arm grab, and then a leg sweep maneuver, when a misdemeanant refuses to comply with the officer's orders and resists, obstructs, or delays the officer in his lawful performance of duties such that the officer has probable cause to arrest him in a challenging environment. The answer is no.

We are mindful of the Supreme Court's pronouncement in *White v. Pauly* that, to satisfy this step in the qualified immunity analysis, we generally must "identify a case where an officer acting under similar circumstances as [Deputy

Padilla] was held to have violated the Fourth Amendment."[3] 137 S. Ct. at 552. We are aware of no such case. Shafer cites four cases with comparable degrees of force used by officers, but none of which involved a challenging environment or an act of physical resistance or obstruction by the arrestee. *See Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003); *Wall v. Cty. of Orange*, 364 F.3d 1107, 1111–12 (9th Cir. 2004); *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989); *Blankenhorn v. City of Orange*, 485 F.3d 463, 478–79 (9th Cir. 2007). Shafer also cites two cases where officers used more force than Deputy Padilla used. *See Bryan v. MacPherson*, 630 F.3d 805, 832–33 (9th Cir. 2010); *Lolli v. Cty. of Orange*, 351 F.3d 410, 416 (9th Cir. 2003). Although we do not require a case to be "on all fours," *Deorle v. Rutherford*, 272 F.3d 1272, 1286 (9th Cir. 2001), "[w]e cannot conclude . . . in light of these existing precedents, that '*every* reasonable official would have understood . . . *beyond debate*,'" *Mattos*, 661 F.3d at 448 (quoting *al-Kidd*, 563 U.S. at 741), that Deputy Padilla's conduct in these circumstances constituted excessive force based on the cases cited by Shafer. In these cases, where there is a "hazy border between excessive and acceptable force," *Brosseau v. Haugen*,

---

[3] There is prior precedent establishing that, in a sufficiently "obvious" case of constitutional misconduct, we do not require a precise factual analogue in our judicial precedents. *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam) ("[I]n an obvious case, [highly generalized] standards can 'clearly establish' the answer, even without a body of relevant case law."); *United States v. Lanier*, 520 U.S. 259, 271 (1997) ("[I]n [some] instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." (internal quotation marks, alteration, and citation omitted)). However, "the bar for finding such obviousness is quite high," *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011), and, because Shafer does not argue that this exception applies, we do not address it.

543 U.S. 194, 201 (2004) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)), such that the officer "reasonably misapprehends the law governing the circumstances []he confronted," qualified immunity protects officers. *Id.* at 198.

Shafer's primary argument on appeal is that Deputy Padilla violated clearly established law, because he had no basis for using *any* force whatsoever. We disagree. The jury found that Deputy Padilla had probable cause to arrest Shafer for violations of California Penal Code section 148 for resisting, delaying, or obstructing an officer. This entitled Deputy Padilla to use *some* degree of force. *See Graham*, 490 U.S. at 396 ("[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion . . . .").

Finally, Shafer argues that it is Deputy Padilla's burden to demonstrate that he did not violate Shafer's clearly established constitutional right. Again, we disagree. It is the plaintiff who "bears the burden of showing that the rights allegedly violated were 'clearly established.'" *See, e.g.*, *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000).

Because Shafer fails to identify sufficiently specific constitutional precedents to alert Deputy Padilla that his particular conduct was unlawful, Deputy Padilla is entitled to qualified immunity.

Since we reverse and vacate the jury verdict and damages awards, the parties shall bear their own costs associated with this appeal.

**REVERSED, JURY VERDICT AND DAMAGES AWARDS VACATED.**