**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LILIANA M. MESKE, | No. 17-35758 |
| Plaintiff-Appellee, | D.C. No. 2:15-cv-00359-SMJ |
| v. | |
| AMANDA RENZELMAN, individually and in her official capacity; DON W. ANDERSON, individually and in his official capacity; ASOTIN COUNTY, a political subdivision of the State of Washington, | MEMORANDUM[*] |
| Defendants-Appellants, | |
| and | |
| DOES, 1-10, | |
| Defendant. | |

Appeal from the United States District Court
for the Eastern District of Washington
Salvador Mendoza, Jr., District Judge, Presiding

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Submitted August 31, 2018[]
Seattle, Washington

Before:  HAWKINS, McKEOWN, and W. FLETCHER, Circuit Judges.

Defendants-Appellants Amanda Renzelman, Don Anderson, and Asotin County ("Deputy Renzelman," "Sergeant Anderson," and "County" respectively, and collectively, "Defendants") appeal the denial of their motion for summary judgment on Plaintiff-Appellee Liliana Meske's ("Meske") claim of excessive force.  Defendants argue that Deputy Renzelman and Sergeant Anderson ("Officers") are entitled to a summary judgment holding that they have qualified immunity.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

The Officers are entitled to summary judgment if, resolving all disputes of fact and credibility in favor of Meske, (1) the facts adduced show that the Officers' conduct did not violate a constitutional right, or (2) the right was not clearly established at the time of the violation.  *Kirkpatrick v. County of Washoe*, 843 F.3d 784, 788 (9th Cir. 2016) (en banc) (describing the two-pronged test of *Saucier v. Katz*, 533 U.S. 194 (2001)).  We may begin our analysis with either prong. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

---

[**]    The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

Viewing the facts in the light most favorable to Meske, the Officers violated Meske's Fourth Amendment right to be free from excessive force during pretrial detention. *See Lolli v. County of Orange*, 351 F.3d 410, 415 (9th Cir. 2003) ("The Fourth Amendment sets the applicable constitutional limitations for considering claims of excessive force during pretrial detention." (quoting *Gibson v. County of Washoe,* 290 F.3d 1175, 1197 (9th Cir. 2002))). Under the Fourth Amendment, an officer's use of force is "measured by the standard of objective reasonableness." *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001). We must balance "the 'nature and quality of the intrusion' on a person's liberty with the 'countervailing governmental interests at stake' to determine whether the use of force was objectively reasonable under the circumstances." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Relevant in this analysis is whether "it is or should be apparent to the officers that the individual involved is emotionally disturbed," because "the tactics to be employed against[] an unarmed, emotionally distraught individual who is creating a disturbance . . . are ordinarily different from those involved in law enforcement efforts to subdue an armed and dangerous criminal." *Deorle*, 272 F.3d at 1282–83.

Beginning with the nature and quality of the intrusion, the Officers violently beat Meske prior to placing her in a suicide smock, breaking her rib and causing

extensive bruising, swelling, and pain. Although Meske was unable to remember parts of the incident several years later, she reported to her medical providers shortly after the incident that "she was beat up by police officers" to the point that she "lost consciousness." Her undisputed injuries are consistent with such a beating.

In addition, the Officers admit that they put Meske in a suicide smock by handcuffing her, pinning her to the ground, and forcibly removing her clothes. Sergeant Anderson, a male, removed Meske's pants, shoes, and socks. Deputy Renzelman, a female, cut off Meske's underwear with a pair of scissors. Another male officer, Deputy Bruce MacArthur, stood in the open doorway.

The governmental interests at stake were limited. Meske was "neither a flight risk, a dangerous felon, nor an immediate threat." *See Bryan v. MacPherson*, 630 F.3d 805, 832 (9th Cir. 2010). Meske was arrested for DUI, which is neither a violent crime nor a felony. Rev. Code Wash. § 46.61.502 (providing that DUI is a gross misdemeanor unless the individual has previously committed certain offenses); *see also Hammer v. Gross*, 932 F.2d 842, 846 (9th Cir. 1991) (en banc) (plurality) (weighing the severity of a DUI in the claimant's favor because "while certainly not to be taken lightly, [it] was a misdemeanor"). Meske also did not pose an immediate threat to the safety of the Officers. She was not armed; she was

4

in police custody; and, by the Officers' own account, she was unsteady and staggering. Meske also did not pose an immediate threat to herself, since the Officers had already removed her jewelry and other potentially dangerous items. Finally, although Meske may have been verbally antagonistic and reluctant to cooperate, she was not "particularly bellicose" or otherwise resisting the Officers in a way that would justify the use of significant force. *See Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1092 (9th Cir. 2013).

Viewing the evidence in the light most favorable to Meske, and balancing the factors "from the perspective of a reasonable officer on the scene," we hold that the Officers' use of force was unreasonable. *Bryan*, 630 F.3d at 831. The Officers were not forced to make a split-second judgment, since Meske was being held under their control at the police station. There was no need to beat Meske violently and forcibly remove her clothes. There was no jail policy authorizing the forcible stripping of an inmate in order to place her in a suicide smock. Further, the jail's policy for strip searches stated that "[o]nly persons of the same sex shall perform strip searches." Exposing Meske's body to male officials was highly "degrading" and heightened the unreasonableness of the Officers' actions. *Cf. Sepulveda v. Ramirez*, 967 F.2d 1413, 1416 (9th Cir. 1992).

In January of 2014, a reasonable officer would have known that it is objectively unreasonable to use significant force on an unarmed person who "has committed no serious offense, is mentally or emotionally disturbed, has been given no warning of the imminent use of such a significant degree of force, poses no risk of flight, and presents no objectively reasonable threat to the safety of the officer or other individuals." *Deorle*, 272 F.3d at 1285; *see also Bryan*, 630 F.3d at 832 (rejecting the use of intermediate force in a "tense, but static, situation" in which the individual "was neither a flight risk, a dangerous felon, nor an immediate threat"). The cases cited by Defendants are not to the contrary, as they involved far less significant forms of force. *See Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1113 (9th Cir. 2017) (addressing the use of an arm grab and leg sweep maneuver); *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994) (noting that the police "did not deliver physical blows").

**AFFIRMED.**