**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 1 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| ROSALINDA LARKIN, individually, and as Guardian/Guardian Ad Litem of Charles Edward Larkin, Jr.,<br><br>       Plaintiff-Appellee,<br><br> v.<br><br>DEREK KENISON, Jr., individually and in his official capacity as a police officer of the Hawaii Police Department,<br><br>       Defendant-Appellant,<br><br> and<br><br>PAUL FERREIRA, individually and in his official capacity as the Chief of Police of the Hawaii Police Department; COUNTY OF HAWAII,<br><br>       Defendants. | No.   20-16573<br><br>D.C. No.<br>1:18-cv-00360-JAO-KJM<br><br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Hawaii
Jill Otake, District Judge, Presiding

Argued and Submitted January 19, 2022
Honolulu, Hawaii

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: O'SCANNLAIN, MILLER, and LEE, Circuit Judges.
Dissent by Judge MILLER.

Officer Derek Kenison appeals the district court's order denying his motion for summary judgment on claims brought against him under 42 U.S.C. § 1983. We have jurisdiction under 28 U.S.C. § 1291, and we review the denial of qualified immunity de novo. *Ames v. King Cty., Washington*, 846 F.3d 340, 347 (9th Cir. 2017). We reverse and remand.

Charles Larkin—a 25-year-old autistic man who had been suffering from anxiety, paranoia, and sleeplessness for two weeks—fled his home after his mother and his two caregivers tried to take him to the emergency room. His mom called 911, explaining her son's mental condition and asking for police assistance to transport him to the hospital. The dispatcher called Officer Kenison, who noticed Larkin meandering and cutting through side lawns of houses.

The parties dispute what happened next. Larkin's mother claims Officer Kenison yelled, "Stop running! Freeze! Put your hands in the air!" She says that this startled Charles and caused him to run across the street. Officer Kenison then chased Larkin and put him in a "bear hug which stopped [him] in his tracks." And then immediately afterwards, Officer Kenison used a leg sweep to bring Larkin to the ground, causing him to land on his head. Larkin suffered lacerations to his head and face and a "tiny" subarachnoid hemorrhage.

In contrast, Officer Kenison says that he approached Larkin, who responded

2

by bolting across the street.  Fearing that his flight could endanger those driving in the roadway, Officer Kenison pursued him.  He commanded, "Stop! Police! Stop Running! You're under arrest!"  Once Officer Kenison caught up to Larkin and grabbed him, Larkin resisted by pulling his arms away and jerking his shoulder from Officer Kenison's grasp.  Officer Kenison then executed an arm-bar takedown, guiding him to the ground.  Throughout this time, Officer Kenison claims that Larkin continuously yelled "Archangels in Heaven protect me! You can't touch me, I'm the son of God!"

Rosalinda Larkin, the mother of Charles Larkin and his guardian ad litem, sued under Section 1983.

1.    "To determine whether the officers are entitled to qualified immunity, 'we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct.'"  *O'Doan v. Sanford*, 991 F.3d 1027, 1036 (9th Cir. 2021) (quoting *Jessop v. City of Fresno*, 936 F.3d 937, 940 (9th Cir. 2019)).  The district court held that there was both a violation of a constitutional right and that the right was clearly established.  But it is within the "sound discretion" of a court to decide whether to address both prongs of the qualified immunity test or rather to only address the second, clearly established prong.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  We have held that "courts 'should think hard, and then think hard again,' before

3

addressing both qualified immunity and the merits of an underlying constitutional claim." *O'Doan*, 991 F.3d at 1036 (quoting *Camreta v. Greene*, 563 U.S. 692, 707 (2011)). With that in mind, we address only whether the right was clearly established.

The district court erred in denying qualified immunity to Officer Kenison. At the time, there was no clearly established right for a person fleeing police to be free from a leg sweep. Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Malley v. Briggs*, 475 U. S. 335, 341 (1986)). Qualified immunity attaches unless the government official violated a clearly established right, meaning a right that "is 'sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (emphasis added)).

No case at the time of the incident clearly established that an officer's use of a leg sweep to take down a fleeing person was excessive force. The Larkins' cited cases involving distinct factual circumstances. In both *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1059 (9th Cir. 2003), and *Tuuamalemalo v. Greene*, 946 F.3d 471, 475 (9th Cir. 2019), the plaintiffs were not fleeing arrest. In *Woodard v. Tabanara*, 125 Haw. 247, 257 P.3d 1224 (Table) (Ct.

4

App. 2011), 2011 WL 2611288 at *3, where the officer used a leg sweep after the plaintiff fled, the court actually affirmed that there was no clearly established right to be free from such force.

The dissent argues that the right to be free from a leg sweep while fleeing was clearly established in *Shafer v. County of Santa Barbara*, 868 F.3d 1110 (9th Cir. 2017). We disagree.

First, *Shafer* is factually distinguishable from this case. That case did not involve the same urgency as our case: two officers confronted a college student who refused to drop his water balloon and was not trying to flee. *Shafer*, 864 F.3d at 1113. Here, in contrast, a single officer was chasing someone who suffered from paranoia, had already escaped his caretakers, and was fleeing from the officer. As the Supreme Court cautioned in reversing us 9-0 recently, the use of "excessive force is an area of law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). *Shafer* does not "squarely govern[] the specific facts at issue" here.

Second, Rosalinda Larkin's case hinges on viewing the bear hug and leg sweep as two clearly separate and discrete events: the officer reasonably grabbed Larkin, but he used excessive force in taking him down. But all the witnesses admit

5

that these two acts occurred almost instantaneously. Larkin's caretaker stated, "[a]lmost immediately, Kenison used his right leg to sweep Charles' feet," and that, "it all happened very quicky . . . after the bear hug." Rosalinda Larkin described how after Officer Kenison bear hugged Charles, "then, immediately, there's a leg sweep." Given that reality, Officer Kenison applied the leg sweep to a fleeing person, not a fully restrained one. We should not "second-guess law enforcement officers' actions" by scrutinizing in slow-motion "each act without looking at the entire event and considering the officers' mindset amid the uncertainty and chaos." *Hyde v. City of Willcox*, 23 F.4th 863, 872 (9th Cir. 2022).

We **REVERSE** the district court's denial of qualified immunity to Officer Kenison and **REMAND** to the district court for further proceedings.

MILLER, Circuit Judge, dissenting:

At 8:15 a.m. on March 8, 2018, Rosalinda Larkin called 911 to seek help in bringing her son, Charles Larkin, to the emergency room. She reported that Charles has autism, that he was experiencing anxiety and paranoia, and that he had recently left home on foot. Officer Derek Kenison responded and found Charles walking down the sidewalk in a residential neighborhood of Hilo, Hawaii. When Officer Kenison ordered him to stop, yelling, "Freeze. Put your hands in the air. You're under arrest," Charles crossed the street. Officer Kenison then grabbed Charles; being more than three times the size of Charles—395 pounds to 114 pounds—the officer easily subdued him. Rosalinda observed Charles put up only "a meager struggle," after which he was "easily overtaken by placing Charles in a bear hug which stopped Charles in his tracks." A bystander reported, "I saw [the officer] grasp the young fellow. I mean, he was in complete control of him." Officer Kenison then performed what he called a "leg sweep," knocking Charles off his feet and driving him into the ground so that he struck the pavement head-first. Charles suffered a traumatic brain injury that required a three-day hospital stay.

Rosalinda now brings this action under 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment. Because this case is at the summary-judgment stage, we must view the evidence in the light most favorable to

1

Rosalinda, the non-moving party, and draw all reasonable inferences in her favor. *Gordon v. County of Orange*, 6 F.4th 961, 967 (9th Cir. 2021). To overcome Officer Kenison's defense of qualified immunity, she must show, first, that the officer violated a right guaranteed by the Fourth Amendment and, second, that the right was clearly established at the time the officer acted. *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (per curiam).

The court rightly does not question the district court's conclusion that the first part of that test is satisfied. Evaluating a claim of excessive force requires considering, among other factors, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Here, Charles was not suspected of any crime. He posed no threat to anyone's safety—the only potential threat that Officer Kenison has identified is the possibility that Charles might jaywalk, a possibility that does little to distinguish him from any pedestrian, especially given that these events took place in broad daylight in a quiet residential neighborhood with little traffic. Finally, although Charles had previously attempted to evade Officer Kenison, by the time of the leg sweep, he was no longer fleeing but was securely held in place. A jury could therefore conclude that the use of such a high level of violent force violated the Fourth Amendment. *See LaLonde v. County of*

2

*Riverside*, 204 F.3d 947, 959 (9th Cir. 2000) ("[I]f the extent of the injury . . . is serious enough, a jury could conclude that [the officer] used force in excess of what was reasonable.").

The second part of the test is also satisfied because of our decision in *Shafer v. County of Santa Barbara*, 868 F.3d 1110 (9th Cir. 2017), which, several months before the events at issue here, clearly established the right to be free from a leg sweep in these circumstances. *Shafer* involved a large gathering of intoxicated college students. *Id.* at 1113. The police received a complaint from four students who reported having been hit by water balloons; the complaint caused "concern" because water balloons "had been a serious problem" in the area "and could cause injuries or start fights." *Id.* Soon thereafter, an officer saw Shafer holding water balloons and ordered him to drop them. *Id.* When Shafer refused to comply, the officer grabbed him by the arm and swung him to the ground. *Id.* As another officer grabbed Shafer's other arm, the first officer kicked out Shafer's feet, causing his face to hit the ground. *Id.* Shafer was then handcuffed and arrested, having suffered superficial injuries. *Id.* at 1113–14.

Significantly, although we held that the officers in *Shafer* were entitled to qualified immunity because it was not yet clearly established that their conduct was unlawful, we also held that they had violated the Fourth Amendment. 868 F.3d at 1116. That holding was consistent with cases establishing the more general

3

proposition that a restrained individual may not be subjected to significant additional force. *See, e.g., Tuuamalemalo v. Greene*, 946 F.3d 471 (9th Cir. 2019) (per curiam); *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003). Our decision in *Shafer* makes clear that an officer acts unlawfully when he "progressively increases" his use of excessive force "from verbal commands, to an arm grab, and then a leg sweep maneuver," even "when a misdemeanant refuses to comply with the officer's orders and resists, obstructs, or delays the officer in his lawful performance of duties such that the officer has probable cause to arrest him in a challenging environment." 868 F.3d at 1117.

To the extent the facts of this case differ from those of *Shafer*, they differ only in ways that make the use of force *less* reasonable. Unlike Shafer, Charles was suspected of no crime, and he posed a negligible risk to public safety. (Officer Kenison asserts that Charles was shouting nonsense, but whatever relevance that might have to his potential dangerousness, two other witnesses specifically dispute it, and at this stage of the litigation, we must view the facts in the light most favorable to Charles.) Also unlike Shafer, Charles was not actively resisting arrest at the time of the leg sweep. Officer Kenison emphasizes that Charles had previously been fleeing, but the leg sweep did not take place until after Officer Kenison was in complete control. As the district court put it, "[v]iewed in the light most favorable to Plaintiffs, although Charles continued to run after Officer

4

Kenison instructed him to stop and freeze, he was unable to resist or flee once Officer Kenison bear-hugged him." The seizure and the leg sweep may have been almost simultaneous, but as any baseball umpire can tell you, almost simultaneous is not the same as simultaneous. Here, too, we must view the facts in the light most favorable to Charles, not Officer Kenison. And viewing the facts in that way, *Shafer* would have placed Officer Kenison on notice that his conduct violated the Fourth Amendment.

The district court correctly denied Officer Kenison's motion for summary judgment, and I would affirm its well-reasoned decision.