NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

DEC 18 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

TRACY PACHOTE, an individual,

       Plaintiff - Appellee,

and

K.R.J., a minor, by and through their guardian ad litem, Edward Johnson,

       Plaintiff,

  v.

STEPHANIE NELSON, in her individual capacity as a sheriff deputy for the Contra Costa Sheriff Department; CHRISTOPHER THOMAS, in his individual capacity as a sheriff deputy for the Contra Costa Sheriff Department,

       Defendants - Appellants,

and

COUNTY OF CONTRA COSTA, a municipal corporation,

       Defendant.

No. 23-4000

D.C. No.
3:21-cv-04097-SK

MEMORANDUM[*]

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the Northern District of California
Sallie Kim, Magistrate Judge, Presiding

Argued and Submitted November 20, 2024
San Jose, California

Before: GRABER, FRIEDLAND, and BUMATAY, Circuit Judges. Dissent by Judge BUMATAY.
Partial Dissent by Judge BUMATAY.

Defendant Sheriff's deputies Stephanie Nelson and Christopher Thomas appeal the denial of qualified immunity for their conduct during an interaction with Plaintiff Tracy Pachote after she called the Contra Costa County Sheriff's Office to report having heard gunshots in her neighborhood. We reverse the district court's denial of qualified immunity to Nelson, but we affirm as to Thomas.

We review de novo the denial of qualified immunity. *Rosenbaum v. City of San Jose*, 107 F.4th 919, 924 (9th Cir. 2024). Because this case comes to us on Defendants' motion for summary judgment, "[w]e 'must view the evidence in the light most favorable to [Plaintiff] . . . and draw all reasonable inferences in [Plaintiff's] favor.'" *Herrera v. L.A. Unified Sch. Dist.*, 18 F.4th 1156, 1158 (9th Cir. 2021) (quoting *Dees v. County of San Diego*, 960 F.3d 1145, 1151 (9th Cir. 2020)).

23-4000

1. Nelson is entitled to qualified immunity as to the seizure claim concerning her presence on Plaintiff's porch and her verbal statements before any alleged use of force.

Officers are entitled to qualified immunity unless a plaintiff can show not only that the "official's actions violated a constitutional right," but also that "the right was 'clearly established' at the time of the violative conduct." *Nelson v. City of Davis*, 685 F.3d 867, 875 (9th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Assuming, without deciding, that Nelson committed a constitutional violation, it was not clearly established at the time she acted that her conduct constituted an unlawful seizure. In support of her claim that the law was clearly established, Plaintiff cites only an unpublished memorandum that postdates the conduct at issue and a single out-of-circuit opinion. Neither could clearly establish the law governing Nelson's conduct, and we are aware of no other case that did so either. *See Nunes v. Arata, Swingle, Van Egmond & Goodwin (PLC)*, 983 F.3d 1108, 1112 (9th Cir. 2020) (per curiam) (explaining the inquiry concerning a clearly established right). The district court therefore erred in denying qualified immunity to Nelson on Plaintiff's "verbal seizure" claim.[1]

---

[1] Because we hold that Nelson is entitled to qualified immunity for her conduct before the use of force, we do not consider Defendants' argument that any claim challenging that conduct was not adequately pleaded.

2. We affirm the denial of qualified immunity to Thomas as to the excessive force claim. To determine whether the use of force is reasonable, we balance "'the nature and quality of the intrusion'" against the "governmental interests at stake," and judge reasonableness "from the perspective of a reasonable officer on the scene." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). Drawing all reasonable inferences in Plaintiff's favor, as we must at this stage, when Thomas began using force, he knew that Plaintiff was a witness who was not suspected of any crime, had heard Plaintiff repeatedly tell Nelson to leave her front porch while Nelson refused to do so, and, as conceded at oral argument, saw Nelson initiate physical contact against Plaintiff by grabbing her arm and the back of her head as Plaintiff passively resisted.[2]

Defendants argue that Thomas could assume that Nelson had a legitimate reason to use force against Pachote under the collective knowledge doctrine because he had worked with Nelson for five months. But "collective knowledge may be imputed only if there has been some 'communication among agents'"; a "'close working relationship'" alone is insufficient. *United States v. Villasenor*,

---

[2] The dissent contends that Thomas could not hear what Nelson and Pachote were arguing about. But Thomas stated that he could hear the "language being used" and that "[a]lthough Nelson's voice was loud so as to be heard, her tone remained calm and composed." Drawing reasonable inferences in Plaintiff's favor, Thomas was aware that Nelson and Pachote were arguing about Pachote's request that Nelson leave her porch.

608 F.3d 467, 475 (9th Cir. 2010) (quoting *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007)). Because Defendants do not allege that Thomas communicated with Nelson prior to using force on Pachote, that doctrine is inapposite.

Rather, Thomas had "a duty to independently evaluate [the] situation when [he] arrive[d], if [he had] an opportunity to do so." *Rice v. Morehouse*, 989 F.3d 1112, 1122 (9th Cir. 2021). Viewing the facts in the light most favorable to Plaintiff, Thomas did have such an opportunity. A reasonable jury could find that Thomas knew that Pachote had neither committed a crime nor posed a threat, and that Thomas's non-trivial use of force in pulling Pachote to the ground, dragging her, and placing his knee on her back, causing her to tear her meniscus, was therefore excessive. *See id.* at 1125. It was also clearly established that "non-trivial force was not justified in the face of passive or even minimal resistance" against a non-threatening individual. *Id.* at 1126; *see Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1116 (9th Cir. 2017) (holding that a reasonable jury could find that an officer's conduct constituted excessive force when he used a leg sweep maneuver against an individual who did not present an immediate threat and was suspected of committing a misdemeanor). Thomas is therefore not entitled to qualified immunity at this stage of the proceeding.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

BUMATAY, Circuit Judge, dissenting in part:

I join the memorandum disposition reversing the district court's denial of qualified immunity to Contra Costa County Sheriff's Deputy Stephanie Nelson. But I would also reverse the district court's denial of qualified immunity to Deputy Christoper Thomas. I thus respectfully dissent on that issue.

Viewing the evidence in the light most favorable to Appellee Tracy Pachote, Deputy Thomas should also receive qualified immunity. He arrived at Pachote's neighborhood in response to several 911 calls reporting shots fired. Pachote had called 911 about the shots. According to Deputy Thomas, he was more than 100 feet from Pachote's house and facing the opposite direction while interviewing possible witnesses, when he heard Pachote repeatedly yelling profanities—telling Deputy Nelson to leave her residence. In response, Deputy Thomas turned around and started walking quickly toward Pachote's house. Deputy Thomas could not hear what Deputy Nelson and Pachote were arguing about.

According to Pachote, which I accept, Deputy Thomas then saw Deputy Nelson grab Pachote by the arm and the back of her head. When he arrived a few seconds later, Deputy Thomas helped Officer Nelson and grabbed and pushed Pachote while Nelson was pulling her by the arm. Deputies Thomas and Nelson then pinned Pachote on the ground with their knees. All in all, a little more than 30

1

seconds elapsed between when Deputy Thomas first heard Pachote's raised voice and when he arrived at the ongoing struggle.

When considering qualified immunity, we view the incident "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (simplified). When Deputy Thomas arrived at the altercation between Pachote and Deputy Nelson, it is undisputed that he did not know the full story of what was happening. While he observed Pachote yelling at Deputy Nelson, he did not know what precipitated the argument. Instead, he witnessed the altercation turn physical just seconds before he arrived at the house. Thus, Deputy Thomas did not "have an opportunity" to "independently evaluate [the] situation" beyond what he had already observed. *See Rice v. Morehouse*, 989 F.3d 1112, 1122 (9th Cir. 2021).

Given Deputy Thomas's limited information, even if Deputy Nelson initiated physical contact, Deputy Thomas could reasonably have believed that Deputy Nelson had initiated a modest physical struggle to prevent Pachote from striking her or from resisting arrest. *See Est. of Strickland v. Nevada Cnty.*, 69 F.4th 614, 621 (9th Cir. 2023) ("Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of an immediate threat, and in those situations courts will not hold that they have violated the Constitution.") (simplified). Deputy Thomas's modest use of force to help Deputy Nelson subdue Pachote was thus objectively

2

reasonable under the totality of the circumstances. *See Graham*, 490 U.S. at 396. Nothing in the Fourth Amendment requires police officers to assume that other officers are acting against the law in using physical force. Nor does the Fourth Amendment require officers to acquire perfect knowledge of the situation before assisting another officer in a physical struggle. Instead, Deputy Thomas saw a fellow officer in physical trouble and decided to assist the other officer using minimal force. The majority is far off the mark in finding this a violation of the Constitution. Their ruling is both against the law and dangerous to law enforcement.

At the very least, clearly established law is not to the contrary. The majority relies on two cases to affirm the district court, but both are distinguishable from the "specific context" of this case. *See Mullenix v. Luna*, 577 U.S. 7, 12 (2015). The first, *Rice*, relied on the fact that the late-arriving officers "did not observe [the suspect] yell or use profanity," were present for over a minute *before* the encounter turned physical, and had spoken with an officer on the scene who explained to them that the situation was not an emergency. *See* 989 F.3d at 1122–23. The officer in the second case, *Shafer v. County of Santa Barbara*, 868 F.3d 1110 (9th Cir. 2017), did not even arrive late to the scene—he initiated the interaction with the suspect and escalated it to a physical confrontation. *See id.* at 1113, 1116.

Because it is "beyond debate" that Deputy Thomas acted reasonably based on his limited knowledge, I would reverse the district court's denial of qualified immunity to him as well. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

I respectfully dissent.