# SUPREME COURT OF THE UNITED STATES

CITY OF ESCONDIDO, CALIFORNIA, ET AL. *v.* MARTY
EMMONS

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 17–1660.   Decided January 7, 2019

PER CURIAM.

The question in this qualified immunity case is whether two police officers violated clearly established law when they forcibly apprehended a man at the scene of a reported domestic violence incident.

The record, viewed in the light most favorable to the plaintiff, shows the following.  In April 2013, Escondido police received a 911 call from Maggie Emmons about a domestic violence incident at her apartment.  Emmons lived at the apartment with her husband, her two children, and a roommate, Ametria Douglas.  Officer Jake Houchin responded to the scene and eventually helped take a domestic violence report from Emmons about injuries caused by her husband.  The officers arrested her husband.  He was later released.

A few weeks later, on May 27, 2013, at about 2:30 p.m., Escondido police received a 911 call about another possible domestic disturbance at Emmons' apartment.  That 911 call came from Ametria Douglas' mother, Trina Douglas.  Trina Douglas was not at the apartment, but she was on the phone with her daughter Ametria, who was at the apartment.  Trina heard her daughter Ametria and Maggie Emmons yelling at each other and heard her daughter screaming for help.  The call then disconnected, and Trina Douglas called 911.

Officer Houchin again responded, along with Officer Robert Craig.  The dispatcher informed the officers that two children could be in the residence and that calls to the

apartment had gone unanswered.

Police body-camera video of the officers' actions at the apartment is in the record.

The officers knocked on the door of the apartment. No one answered. But a side window was open, and the officers spoke with Emmons through that window, attempting to convince her to open the door to the apartment so that they could conduct a welfare check. A man in the apartment also told Emmons to back away from the window, but the officers said they could not identify the man. At some point during this exchange, Sergeant Kevin Toth, Officer Joseph Leffingwell, and Officer Huy Quach arrived as backup.

A few minutes later, a man opened the apartment door and came outside. At that point, Officer Craig was standing alone just outside the door. Officer Craig told the man not to close the door, but the man closed the door and tried to brush past Officer Craig. Officer Craig stopped the man, took him quickly to the ground, and handcuffed him. Officer Craig did not hit the man or display any weapon. The video shows that the man was not in any visible or audible pain as a result of the takedown or while on the ground. Within a few minutes, officers helped the man up and arrested him for a misdemeanor offense of resisting and delaying a police officer.

The man turned out to be Maggie Emmons' father, Marty Emmons. Marty Emmons later sued Officer Craig and Sergeant Toth, among others, under Rev. Stat. §1979, 42 U. S. C. §1983. He raised several claims, including, as relevant here, a claim of excessive force in violation of the Fourth Amendment. The suit sought money damages for which Officer Craig and Sergeant Toth would be personally liable. The District Court held that the officers had probable cause to arrest Marty Emmons for the misdemeanor offense. The Ninth Circuit did not disturb that finding, and there is no claim presently before us that the officers

lacked probable cause to arrest Marty Emmons. The only claim before us is that the officers used excessive force in effectuating the arrest.

The District Court rejected the claim of excessive force. 168 F. Supp. 3d 1265, 1274 (SD Cal. 2016). The District Court stated that the "video shows that the officers acted professionally and respectfully in their encounter" at the apartment. *Id.*, at 1275. Because only Officer Craig used any force at all, the District Court granted summary judgment to Sergeant Toth on the excessive force claim.

Applying this Court's precedents on qualified immunity, the District Court also granted summary judgment to Officer Craig. According to the District Court, the law did not clearly establish that Officer Craig could not take down an arrestee in these circumstances. The court explained that the officers were responding to a domestic dispute, and that the encounter had escalated when the officers could not enter the apartment to conduct a welfare check. The District Court also noted that when Marty Emmons exited the apartment, none of the officers knew whether he was armed or dangerous, or whether he had injured any individuals inside the apartment.

The Court of Appeals reversed and remanded for trial on the excessive force claims against both Officer Craig and Sergeant Toth. 716 Fed. Appx. 724 (CA9 2018). The Ninth Circuit's entire relevant analysis of the qualified immunity question consisted of the following: "The right to be free of excessive force was clearly established at the time of the events in question. *Gravelet-Blondin* v. *Shelton*, 728 F. 3d 1086, 1093 (9th Cir. 2013)." *Id.*, at 726.

We reverse the judgment of the Court of Appeals as to Sergeant Toth, and vacate and remand as to Officer Craig.

With respect to Sergeant Toth, the Ninth Circuit offered no explanation for its decision. The court's unexplained reinstatement of the excessive force claim against Sergeant Toth was erroneous—and quite puzzling in light of

the District Court's conclusion that "only Defendant Craig was involved in the excessive force claim" and that Emmons "fail[ed] to identify contrary evidence." 168 F. Supp. 3d, at 1274, n. 4.

As to Officer Craig, the Ninth Circuit also erred. As we have explained many times: "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela* v. *Hughes*, 584 U. S. ___, ___ (2018) (*per curiam*) (slip op., at 4) (internal quotation marks omitted); see *District of Columbia* v. *Wesby*, 583 U. S. ___, ___–___ (2018); *White* v. *Pauly*, 580 U. S. ___, ___–___ (2017) (*per curiam*); *Mullenix* v. *Luna*, 577 U. S. ___, ___–___ (2015) (*per curiam*).

Under our cases, the clearly established right must be defined with specificity. "This Court has repeatedly told courts . . . not to define clearly established law at a high level of generality." *Kisela*, 584 U. S., at ___ (slip op., at 4) (internal quotation marks omitted). That is particularly important in excessive force cases, as we have explained:

> "Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue. . . .
>
> "[I]t does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer cannot be said to have violated a clearly estab-

lished right unless the right's contours were suffi-
ciently definite that any reasonable official in the de-
fendant's shoes would have understood that he was
violating it." *Id.*, at \_\_\_ (slip op., at 5) (quotation
altered).

In this case, the Court of Appeals contravened those
settled principles. The Court of Appeals should have
asked whether clearly established law prohibited the
officers from stopping and taking down a man in these
circumstances. Instead, the Court of Appeals defined the
clearly established right at a high level of generality by
saying only that the "right to be free of excessive force"
was clearly established. With the right defined at that
high level of generality, the Court of Appeals then denied
qualified immunity to the officers and remanded the case
for trial. 716 Fed. Appx., at 726.

Under our precedents, the Court of Appeals' formulation
of the clearly established right was far too general. To be
sure, the Court of Appeals cited the *Gravelet-Blondin* case
from that Circuit, which described a right to be "free from
the application of non-trivial force for engaging in mere
passive resistance. . . ." 728 F. 3d, at 1093. Assuming
without deciding that a court of appeals decision may
constitute clearly established law for purposes of qualified
immunity, see *City and County of San Francisco* v.
*Sheehan*, 575 U. S. \_\_\_, \_\_\_ (2015), the Ninth Circuit's
*Gravelet-Blondin* case law involved police force against
individuals engaged in *passive* resistance. The Court of
Appeals made no effort to explain how that case law pro-
hibited Officer Craig's actions in this case. That is a prob-
lem under our precedents:

> "[W]e have stressed the need to identify a case where
> an officer acting under similar circumstances was
> held to have violated the Fourth Amendment. . . .
> While there does not have to be a case directly on

point, existing precedent must place the lawfulness of the particular [action] beyond debate. . . . Of course, there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances. . . . But a body of relevant case law is usually necessary to clearly establish the answer . . . ." *Wesby*, 583 U. S., at ___ (slip op., at 15) (internal quotation marks omitted).

The Court of Appeals failed to properly analyze whether clearly established law barred Officer Craig from stopping and taking down Marty Emmons in this manner as Emmons exited the apartment. Therefore, we remand the case for the Court of Appeals to conduct the analysis required by our precedents with respect to whether Officer Craig is entitled to qualified immunity.

The petition for certiorari is granted, the judgment of the Court of Appeals is reversed in part and vacated in part, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*