**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MARTY EMMONS; MAGGIE EMMONS,
*Plaintiffs-Appellants*,

v.

CITY OF ESCONDIDO; CRAIG CARTER,
EPD Chief of Police; JIM MAHER,
Former EPD Chief of Police; KEVIN
TOTH, EPD Sgt.; ROBERT CRAIG,
EPD Officer; JAKE HOUCHIN, EPD
Officer; JOSEPH LEFFINWELL, EPD
Officer; DOES, 2–50, inclusive;
COREY MOLES, DOE 1, Former
Acting EPD Chief of Police,
            *Defendants-Appellees.*

No. 16-55771

D.C. No.
3:14-CV-01662-
JM-DHB

OPINION

On Remand from the United States Supreme Court

Filed April 25, 2019

Before: Susan P. Graber and Andrew D. Hurwitz, Circuit
Judges, and Algenon L. Marbley,[*] District Judge.

Per Curiam Opinion

---

[*] The Honorable Algenon L. Marbley, United States District Judge
for the Southern District of Ohio, sitting by designation.

## SUMMARY[**]

### Civil Rights

Following a remand by the United States Supreme Court, the panel affirmed the district court's summary judgment in favor of a police officer in an action brought pursuant to 42 U.S.C. § 1983 alleging that the officer used excessive force when he grabbed plaintiff and took him to the ground during an investigation of a reported domestic violence incident.

The panel held that it was unable to find a specific case precisely on point that would establish that the officer's conduct violated a clearly established constitutional right of which a reasonable official would have known, and therefore the officer was entitled to qualified immunity. The panel stated that although plaintiff posed no apparent danger to the police officer, it was mindful of the Supreme Court's conclusion that a case involving police force employed in response to mere "*passive* resistance" to police was not sufficiently on point with this case as to satisfy the Court's demand for specificity.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

PER CURIAM:

The district court granted summary judgment in favor of the City of Escondido and several Escondido police officers in this 42 U.S.C. § 1983 action. *Emmons v. City of Escondido*, 168 F. Supp. 3d 1265, 1276 (S.D. Cal. 2016). We affirmed in part and reversed in part, holding that Officers Toth and Craig were not entitled to qualified immunity. 716 F. App'x 724, 726 (9th Cir. 2018) (unpublished). The Supreme Court granted certiorari, reversed our decision as to Officer Toth, and vacated and remanded as to Officer Craig. 139 S. Ct. 500, 502 (2019) (per curiam). We ordered supplemental briefing on the following question: Did "clearly established law prohibit[] the officers from stopping and taking down a man in these circumstances?" After considering that briefing, we affirm the district court's grant of summary judgment in favor of Officer Craig.

### I.

At the time this action was filed, Maggie Emmons lived in Escondido, California, with her husband, their two children, and a roommate, Ametria Douglas. In April 2013, Maggie called 911, accusing her husband of domestic violence. *Emmons*, 139 S. Ct. at 501. Escondido police arrested the husband, but he was never prosecuted. *Id.*

In May 2013, Douglas was on the phone with her mother. After the call dropped, Douglas's mother called 911 to report what she believed was an on-going fight at the apartment. The Escondido police were asked to conduct a welfare check. Officer Craig was one of the responding officers.

When the Escondido officers arrived on the scene, they found Douglas with the Emmons children at the swimming pool complex of the apartment. Douglas told the officers that everything was fine and that they were not needed. The officers proceeded to the apartment nonetheless. Maggie and her father, Marty Emmons, were watching television. Although Marty urged her to cooperate, Maggie refused to allow the officers to enter the apartment despite their repeated requests.

Marty then emerged from the apartment, and the physical encounter with Craig that is the subject of this case ensued. The parties dispute what happened and, on this appeal from an adverse summary judgment, we must take the facts in the light most favorable to Marty. *Tolan v. Cotton*, 572 U.S. 650, 655–57 (2014) (per curiam). Marty testified that he stepped out of the apartment with his back to the exterior hallway and began to close the door. He could not see any officers by the door and did not hear anyone telling him to keep the door open. He first knew that Craig was there when Craig grabbed him and threw him to the ground. Douglas, who was watching from the pool, described the interaction as one in which "Mr. Emmons was pulled out of the door," and "tackled to the ground."

The police body cameras recorded Craig saying the following: "Hi. How you doing sir? Don't close the door. Get your hands behind your back. Get on the ground, get on the ground, get on the ground." The physical interaction with Marty occurs as Craig is speaking.

## II.

Qualified immunity shields government officials from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In this context, "clearly established" means that, "at the time of the officer's conduct, the law was 'sufficiently clear that every reasonable official would understand that what he is doing' is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Courts must "define the 'clearly established' right at issue on the basis of the 'specific context of the case.'" *Tolan*, 572 U.S. at 657 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Thus, liability will not attach unless there exists "a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam); *see also Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) ("[P]olice officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015))). A plaintiff "bears the burden of showing that the right at issue was clearly established." *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011) (citing *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002)).

Marty cited several cases that he believes clearly establish that Craig used excessive force. Those cases, however, do not present sufficiently similar factual circumstances to have "placed the . . . constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. In several of the cases, the force used was significantly greater than the force used in this case or involved differently situated plaintiffs. *See, e.g.*, *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1091–92 (9th Cir. 2013) (tasing a bystander); *Nelson v. City of Davis*, 685 F.3d 867, 878 (9th Cir. 2012) (shooting an

individual in the eye with "a pepperball projectile"); *Blankenhorn v. City of Orange*, 485 F.3d 463, 478–79 (9th Cir. 2007) (gang-tackling a suspected trespasser at a shopping mall); *Santos v. Gates*, 287 F.3d 846, 853–54 (9th Cir. 2002) (taking down an individual, resulting in a broken back); *Headwaters Forest Def. v. County of Humboldt*, 276 F.3d 1125, 1130–31 (9th Cir. 2002) (using pepper spray against protesters).

Marty also cited *Meredith v. Erath*, 342 F.3d 1057 (9th Cir. 2003). But, in that case, IRS agents had entered the plaintiff's office, and although she "made no attempt to leave," one "grabbed her by her arms, forcibly threw her to the ground, and, twisting her arms, handcuffed her." *Id.* at 1061. Here, as the Supreme Court emphasized, Marty was attempting to step out of his daughter's apartment and close the door. *Emmons*, 139 S. Ct. at 504.

The case closest to this one that we have discovered is *Hansen v. Black*, 885 F.2d 642 (9th Cir. 1989). Investigating a gas station robbery, police officers went to the plaintiff's residence, suspecting that her son may have been involved. *Id.* at 643. They found the plaintiff outside, taking out her trash, and we held that that the officers used excessive force in handcuffing her "in an abusive manner" after she refused to comply with an officer's order to put the trash down. *Id.* at 645. But here, the officers were investigating an incident that occurred inside the Emmons home, and Marty had not been ruled out as a possible suspect.

Although Marty posed no apparent danger to Craig, we are mindful of the Supreme Court's conclusion that a case involving police force employed in response to mere "*passive* resistance" to police is not sufficiently on point to constitute clearly established law. *Emmons*, 139 S. Ct. at 503. The Court therefore must have concluded implicitly

that Marty's actions involved more than passive resistance. Otherwise, the Court would not have vacated our decision in the face of our citation to *Gravelet-Blondin*, 728 F.3d at 1093, in which we held that "[t]he right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established prior to 2008." Given the Court's admonition, we are unable to find a case so precisely on point with this one as to satisfy the Court's demand for specificity. Officer Craig is therefore entitled to qualified immunity.[1]

**AFFIRMED.**

---

[1] Because we hold that Craig is entitled to qualified immunity, we do not address whether he violated Mr. Emmons's constitutional rights. *See Pearson*, 555 U.S. at 236–37. The Supreme Court has advised that "lower courts 'should think hard, and then think hard again,' before addressing both qualified immunity and the merits of an underlying constitutional claim." *Wesby*, 138 S. Ct. at 589 n.7 (quoting *Camreta v. Greene*, 563 U.S. 692, 707 (2011)).