NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

DEC 24 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

A.T., a minor, by and through his Guardian Ad Litem, L.T.,

Plaintiff-Appellee,

v.

PETER BALDO; JUDY BENNIE; MARY BOEHM; BECKY BRAVO; DEBBIE CANNON; STEPHANIE DILBECK; LISA HEWITT; VALERIE MILLER; SANDRA MOORE; CINDY STONE; JEN ROGERS; CHRISTY CARTER; K. D. ASHTON; DONNA KEARNS; ELIZABETH LEE,

Defendants-Appellants,

and

DRY CREEK JOINT ELEMENTARY SCHOOL DISTRICT; PLACER COUNTY OFFICE OF EDUCATION; PLACER COUNTY CHILDREN SYSTEM OF CARE,

Defendants.

No.    18-16366

D.C. No.
2:16-cv-02925-MCE-DB

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., District Judge, Presiding

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Argued and Submitted December 4, 2019
San Francisco, California

Before:  CALLAHAN and BADE, Circuit Judges, and BOUGH,[**] District Judge.

Plaintiff-Appellee, A.T., by and through his Guardian Ad Litem, L.T., filed a complaint alleging denial of civil rights under 42 U.S.C. § 1983, based on the use of physical restraints and seclusion (sometimes referred to as "containment" or "isolation") by teachers and staff at his elementary school, Secret Ravine.  These measures were used to address A.T.'s behavior issues over the course of three school years ending in 2009.  According to A.T., who was in second grade when the incidents began, the school's use of restraints and seclusion exceeded what was permissible under Secret Ravine's Therapeutic Containment Policy and A.T.'s Individualized Education Plan (IEP) and thereby violated his Fourth Amendment rights.  It is undisputed that, during the school years in question, A.T. was severely emotionally disturbed and regularly displayed aggressive and violent behavior toward teachers and other students.

Defendants-Appellants, Secret Ravine teachers and staff members who administered the restraints and seclusion or who supervised and approved their use,

---

[**]     The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri, sitting by designation.

2

moved to dismiss A.T.'s complaint under Fed. R. Civ. P. 12(b)(6) on grounds of qualified immunity. The district court denied this motion, holding that Secret Ravine's use of restraints and seclusion was excessive and, coupled with the school's alleged failure to inform A.T.'s parents and to hold IEP meetings to address the situation, violated A.T.'s clearly established Fourth Amendment "right to be free from unwarranted or unreasonable seizure at school."

We have jurisdiction under 28 U.S.C. § 1291. Reviewing the district court's denial of qualified immunity de novo, but assuming all factual allegations in the complaint as true and construing them in the light most favorable to A.T., *see Entler v. Gregoire*, 872 F.3d 1031, 1038 (9th Cir. 2017), we reverse.[1]

1.      "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam). Under the Supreme Court's two-part test for qualified immunity, courts must decide (1) whether the facts alleged show an official's conduct violated a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

---

[1]      Because the parties are familiar with the facts of this case, we do not discuss them at length here.

Courts have discretion to decide which of the two prongs of this test to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

For a constitutional right to be clearly established, a court must define the right at issue with "specificity" and "not . . . 'at a high level of generality.'" *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam) (quoting *Kisela*, 138 S. Ct. at 1152). The plaintiff "bears the burden of showing that the rights allegedly violated were clearly established." *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (internal quotation marks and citation omitted). "While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate." *Emmons*, 139 S. Ct. at 504 (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 581 (2018) (internal quotation marks omitted)); *see Jessop v. City of Fresno*, 936 F.3d 937, 940-41 (9th Cir. 2019) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.") (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The Supreme Court has commented that, when a particular right has been defined at the appropriate level of specificity and that right is clearly established, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). Even public officials who know

that what they are doing is "morally wrong" are protected by qualified immunity, so long as "they did not have clear notice that [their actions] violated the Fourth Amendment" or other applicable law. *Jessop*, 936 F.3d at 942; *see Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (qualified immunity shields reasonable, even if constitutionally deficient, misapprehensions of the law).

When the only cases a plaintiff cites are factually distinguishable, or provide "nothing more than a general principle," the public official is entitled to qualified immunity "except in the 'rare obvious case' in which a general legal principle makes the unlawfulness of the [official's] conduct clear despite a lack of precedent addressing similar circumstances." *West v. City of Caldwell*, 931 F.3d 978, 983, 985 (9th Cir. 2019) (quoting *Emmons*, 139 S. Ct. at 503-04); *see Sharp v. Cty. of Orange*, 871 F.3d 901, 911-12 (9th Cir. 2017) (rejecting the "one controlling case" offered by the plaintiffs as "too dissimilar on its facts" to provide clear notice to the defendants that "*their particular conduct* was unlawful").

2. Relatively few cases have examined the contours of a student's right to be free from unreasonable seizures in the school setting. *See Couture v. Bd. of Educ. of Albuquerque Pub. Schs.*, 535 F.3d 1243, 1254-55 (10th Cir. 2008) (discussing the "disinclination" on the part of courts—particularly appellate courts—to "insert [them]selves into the evaluation of educational policy and techniques"). This is particularly true in the specific context at issue in this case:

the use of physical restraints and seclusion by school officials to address the behavioral challenges posed by a severely emotionally disturbed student.

The courts that have addressed this issue have concluded that, while students have a clearly established Fourth Amendment right to be free from arbitrary and excessive corporal punishment,[2] the use of physical restraints and seclusion in school settings—particularly in special education classrooms—is not necessarily unlawful. *See C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 633 (8th Cir. 2010) (teacher's allegedly excessive use of restraints and seclusion that were part of developmentally delayed student's IEP, "even if overzealous at times and not recommended . . . was not a substantial departure from accepted judgment, practice or standards and was not unreasonable in the constitutional sense"); *Couture*, 535 F.3d at 1251-52, 1256 (repeated use of timeout rooms over a two-month period to address student's disruptive and dangerous behavior was

---

[2]      *See Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1181-82 (9th Cir. 2007) (teacher not entitled to qualified immunity where she repeatedly hit a four-year-old disabled student, body-slammed him, and forced him to walk without shoes across asphalt); *P.B. v. Koch*, 96 F.3d 1298, 1302-03 (9th Cir. 1996) (principal not entitled to qualified immunity where he physically assaulted multiple students when there was no need for force); *Doe ex rel. Doe v. Hawaii Dep't of Educ.*, 334 F.3d 906, 909-10 (9th Cir. 2003) (vice principal not entitled to qualified immunity where he taped a second-grader's head to a tree because the student was "horsing around" and refusing to stand still); *Jefferson v. Ysleta Indep. Sch. Dist.,* 817 F.2d 303, 305 (5th Cir. 1987) (denying qualified immunity where teacher, as part of a school-sanctioned educational exercise, tied an eight-year-old child to her chair with a jump rope for almost two full school days).

reasonable, particularly in light of the fact that timeouts were prescribed in the student's IEP as a mechanism to teach him behavioral control); *Alex G. ex rel. Dr. Steven G. v. Bd. of Trs. of Davis Joint Unified Sch. Dist.*, 387 F. Supp. 2d 1119, 1125 (E.D. Cal. 2005) (use of physical restraints against aggressive and violent autistic student not unlawful despite parents' non-consent, where state law allows such restraints when the student poses an immediate danger to himself or others).

Even where restraints and seclusion are used in a manner that exceeds what is authorized in the student's IEP, courts have generally found their use to be constitutionally permissible. *See Payne v. Peninsula Sch. Dist.*, 623 F. App'x 846, 847-48 (9th Cir. 2015) (no violation of clearly established rights where teacher repeatedly placed autistic student in prolonged isolation in a small, dark room as a punishment and had student assist in cleaning up after he defecated in the room, both of which violated student's IEP); *Miller v. Monroe Sch. Dist.*, 159 F. Supp. 3d 1238, 1249 (W.D. Wash. 2016) (finding no clearly established right against holds and seclusions that were performed for discriminatory reasons, by a teacher without the proper training, for lengths that exceeded the maximum time limit in student's IEP).

In *A.B. ex rel. B.S. v. Adams-Arapahoe 28J Sch. Dist.*, 831 F. Supp. 2d 1226, 1244 (D. Colo. 2011), the district court denied qualified immunity to a teacher sued for violating a disabled student's Fourth Amendment rights through the

7

teacher's use of physical restraints in a special education classroom, where the restraints were not a part of the student's IEP and her parents did not consent to them. But *A.B. ex rel. B.S.* is a district court decision in a different circuit that was published two years *after* the alleged violations in this case. Furthermore, that case involved a mentally handicapped, five-year-old girl whose teacher strapped her to a wooden restraint chair on a daily basis, with her view obstructed, for approximately six weeks, for no legitimate purpose. *Id.* at 1237-38. Based on the excessiveness of the restraint in relation to the minor behavioral issues presented by the student, the district court reasonably concluded that the teacher—whose colleagues unanimously expressed concern about what she was doing—should have understood that her actions were unlawful. *Id.*

Other than *A.B. ex rel. B.S.*, we know of few, if any, cases in which qualified immunity was denied to a teacher or school official who used physical restraints or seclusion in the course of their "custodial and tutelary responsibility." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 656 (1995). Instead, in all cases in this area where Fourth Amendment violations have been found, the teacher or school official's actions clearly fell under the rubric of "arbitrary and excessive corporal punishment." *See supra* note 2. Furthermore, "[f]ederal [statutory] law does not contain general provisions relating to the use of seclusion and restraints, and there are [currently] no specific federal laws concerning the use of seclusion and

restraint in public schools."  Nancy Lee Jones & Jody Feder, U.S. Congressional Research Service Report for Congress: The Use of Seclusion and Restraint in Public Schools: The Legal Issues 2 (Oct. 14, 2010); *see also* U.S. Dept. of Educ., Restraint and Seclusion: Resource Document (May 15, 2012).

3.     In light of the above, addressing the second part of the *Saucier* inquiry, *see Pearson*, 555 U.S. at 236, we hold that Appellants are entitled to qualified immunity because they did not violate clearly established law at the time of the alleged violations.  It is not enough, as A.T. argues, that Appellants "knew what they were doing was wrong and outside of [A.T.'s] IEP."  We have recognized that even public officials who know that what they are doing is "morally wrong" are protected by qualified immunity, so long as "they did not have clear notice that [their actions] violated the Fourth Amendment" or other applicable law. *Jessop*, 936 F.3d at 942.  Likewise, "[p]edagogical misjudgments . . . do not, without more, expose teachers to liability under the Fourth Amendment." *Couture*, 535 F.3d at 1254.

The district court mistakenly defined the right at issue in this case at too high a level of generality, citing the broad right of students "to be free from unwarranted or unreasonable seizure at school."  This broad definition fails to address the specific context at issue in this case: the use of physical restraints and seclusion by school officials to address the challenges presented by a severely emotionally

disturbed student whose behavior poses a safety threat to others. Furthermore, it fails to provide school officials clear notice of *when* the use of restraints and seclusions in this context transgresses what is lawful under the Fourth Amendment. Finally, in finding that Appellants violated this highly generalized right, the district court improperly relied on factors (such as the failure to hold IEP meetings) that have no bearing on whether Appellants had clear notice that physically restraining and secluding A.T. violated his constitutional rights.

The real question in this case, framed at the appropriate level of specificity, is whether clearly established law (in 2006-2009) prohibited Appellants from using restraints and seclusion to address A.T.'s severe emotional and behavioral issues, including aggression toward staff and students, when the specific uses and durations of the restraints and seclusion were often in excess of what was prescribed in A.T.'s IEP. Because the answer to that question is no, even accepting the factual allegations in A.T.'s complaint, Appellants are entitled to qualified immunity under the second prong of *Saucier*.[3]

**REVERSED**

---

[3] We also grant Appellants' Motion to Strike Docket Entry 36, which was unopposed.