**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 19-2252**

───────────

JANE DOE,

       Plaintiff – Appellant,

v.

DR. SCOTT SYVERUD; DR. KATHLEEN ROOT; ADAM CARTER; CALLIE
BATEMAN;

       Defendants – Appellees,

and

PAMELA SUTTON-WALLACE, Chief Executive Officer of the University of Virginia
Medical Center; JANE ROE 1-3; JOHN DOE 1-5.

       Defendants.

───────────

Appeal from the United States District Court for the Western District of Virginia, at
Charlottesville. Norman K. Moon, Senior District Judge. (3:18-cv-00041-NKM-JCH)

───────────

Argued: January 26, 2022                      Decided: February 24, 2022

───────────

Before NIEMEYER, AGEE, and DIAZ, Circuit Judges.

───────────

Affirmed by unpublished per curiam opinion.

───────────

**ARGUED:** Jeffrey Edward Fogel, Charlottesville, Virginia, for Appellant. Alice Anne
Lloyd, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia;

Marc A. Peritz, FLORA PETTIT PC, Charlottesville, Virginia, for Appellees. **ON BRIEF:** John E. Peterson, Jr., Andrew G.H. Miller, PIEDMONT LIABILITY TRUST, Charlottesville, Virginia; Mark R. Herring, Attorney General, Samuel T. Towell, Deputy Attorney General, Marshall H. Ross, Senior Assistant Attorney General, Toby J. Heytens, Solicitor General, Martine E. Cicconi, Deputy Solicitor General, Michelle S. Kallen, Deputy Solicitor General, Jessica Merry Samuels, Assistant Solicitor General, Zachary R. Glubiak, John Marshall Fellow, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jane Doe appeals from the district court's orders granting Appellees' motions for judgment on the pleadings, arguing that the district court erred when concluding that qualified immunity barred her constitutional claims. Finding no error, we affirm.

I.

Doe filed a complaint in the U.S. District Court for the Western District of Virginia pursuant to 42 U.S.C. § 1983, raising constitutional and state law claims based on medical treatment she received at the University of Virginia Medical Center ("UVMC"). Relevant here, she named two nurses, Adam Carter and Callie Bateman, and two doctors, Scott A. Syverud and Kathleen Root (collectively, "Appellees"), as defendants.[1] The facts alleged in her complaint[2] are as follows:

On January 11, 2018, Doe "attempted suicide by placing a hose in the exhaust pipe of her car running into the passenger compartment." J.A. 9. Upon discovering Doe in her vehicle, a law enforcement officer contacted the Charlottesville Albemarle Rescue Squad

---

[1] Doe also named Pamela Sutton-Wallace (UVMC's Chief Executive Officer), five John Does, and three Jane Roes as defendants. However, she voluntarily dismissed Sutton-Wallace as a party to this appeal, and the record does not reflect any effort to identify the remaining individuals.

[2] In reviewing a dismissal under Federal Rule of Civil Procedure 12(c), "we must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019) (internal quotation marks omitted).

to transport her to UVMC for treatment "pursuant to a paperless custody order." J.A. 10 (internal quotation marks omitted); *see* Va. Code Ann. § 37.2-808(G).

At the hospital, Nurse Carter attempted to collect blood and urine samples from Doe, who objected. Nurse Carter "told her that the Emergency Custody Order authorized the taking of samples and the provision of medications even if she objected." J.A. 10. "Because of [Doe's] strenuous objections to blood work and the urine sample," *id.*, Nurse Carter administered a series of injections, including a psychotropic drug and a sedative, at the direction of Drs. Syverud and Root. Doe was then restrained, while an unnamed individual drew her blood. When Doe continued to resist, Nurse Carter administered another psychotropic drug, once more at the direction of Drs. Syverud and Root. Doe was again restrained at the request of Nurses Carter and Bateman, and a urine sample was obtained using a catheter.

No one "advise[d Doe] of the drugs she was administered or why nor of the likely effects and potential side effects of those medications." J.A. 10–11. Doe alleged that "[a]t all times" during these events, she "was competent to make decisions concerning her treatment." J.A. 11.

Doe claimed Appellees' conduct violated her right to due process, asserting that she had "a protected liberty interest in refusing unwanted medical treatment," "knowing what drugs she [was] being administered," and "giv[ing] informed consent." J.A. 12. Doe also asserted that Appellees' actions violated the Fourth and Fourteenth Amendments "to be free of restraints, either medical or physical." J.A. 13. Finally, she brought Virginia tort

4

law claims, contending that Appellees' conduct constituted "gross negligence as well as assault and battery and false imprisonment." *Id.*

Dr. Syverud filed a motion for judgment on the pleadings. *See* Fed. R. Civ. P. 12(c). The district court granted the motion, concluding that Dr. Syverud was entitled to qualified immunity because the rights Doe claimed were violated were not clearly established at the time of the alleged violation. The court first recognized that Doe's claims implicated several constitutional principles, including the need for law enforcement officers to have probable cause to seize an individual in the mental health context, an individual's right to refuse unwanted medical treatment, and a detainee's right to adequate medical care. Based on these principles, the court explained that "if [Doe] was properly in state custody at the time she was presented to [Dr.] Syverud, there [were] few bright lines regarding her rights, providing further support to the conclusion that [Dr.] Syverud [was] entitled to qualified immunity." J.A. 39.

The court then turned to Virginia's statutory framework, determining that the statute authorizing Doe's custody and treatment was § 37.2-808 of the Virginia Code Annotated, which provides,

> A law-enforcement officer who, based upon his observation or the reliable reports of others, has probable cause to believe that a person meets the criteria for emergency custody as stated in this section may take that person into custody and transport that person to an appropriate location to assess the need for hospitalization or treatment without prior authorization.

Va. Code Ann. § 37.2-808(G). Emergency custody is appropriate if the law enforcement officer has probable cause to believe an individual:

(i) has a mental illness and that there exists a substantial likelihood that, as a result of mental illness, the person will, in the near future, (a) cause serious physical harm to himself or others as evidenced by recent behavior causing, attempting, or threatening harm and other relevant information, if any, or (b) suffer serious harm due to his lack of capacity to protect himself from harm or to provide for his basic human needs, (ii) is in need of hospitalization or treatment, and (iii) is unwilling to volunteer or incapable of volunteering for hospitalization or treatment.

*Id.* § 37.2-808(A).

The court noted that, although the statute is directed at law enforcement officers, it nonetheless "contemplates the need to obtain 'emergency medical treatment or further medical evaluation' at any time for a person in custody pursuant to this section." J.A. 40 (quoting Va. Code Ann. § 37.2-808(I)). The court thus rejected Doe's argument that a different section—§ 37.2-1101, which provides for the medical treatment of an incompetent person *by judicial order*—controlled the analysis, explaining that such an argument ignored the direct relevance of § 37.2-808 and the fact that Doe alleged she was competent.

Based on the foregoing, the court concluded that "it would not be clear to a reasonable official that [Dr.] Syverud's conduct was unlawful in the situation he confronted." J.A. 41 (internal quotation marks omitted). The court emphasized that "[t]here [was] no dispute that [Doe's] attempted suicide gave law enforcement officers probable cause to believe that she met the criteria for emergency custody as required by Fourth Circuit precedent and as set forth in § 37.2-808." J.A. 41. Accordingly, it explained, "a reasonable actor in [Dr.] Syverud's position would have [had] no cause to believe [Doe's] seizure was in violation of her Fourth Amendment rights." *Id.*

6

Moreover, the court opined that Dr. Syverud "could not [have] know[n] whether [Doe] ingested other toxic substances that she chose not to disclose to increase the likelihood of success in her efforts to kill herself." *Id.* (internal quotation marks omitted). The court concluded, "Given that [Doe] was properly brought to [Dr.] Syverud pursuant to a statute that authorizes 'emergency medical treatment or further medical evaluation,' [Dr.] Syverud's belief that he had a right to perform the procedures necessary to treat [Doe] was reasonable." *Id.* (quoting Va. Code Ann. § 37.2-808(I)). Indeed, the court noted that Dr. Syverud "belie[ved] that he had a duty to prevent [Doe's] suicide." *Id.* The court thus concluded that qualified immunity barred Doe's claims against Dr. Syverud. Relatedly, it determined that he was entitled to judgment on Doe's state law claims.

The remaining Appellees filed a joint motion for judgment on the pleadings, which the district court also granted based on qualified immunity. It subsequently dismissed Doe's complaint without prejudice and directed the Clerk to strike the case from the docket. Doe filed a timely appeal, over which this Court has jurisdiction pursuant to 28 U.S.C. § 1291.[3]

## II.

We review de novo a district court's order granting a motion for judgment on the pleadings under Rule 12(c). *Affinity Living Grp., LLC v. StarStone Specialty Ins. Co.*, 959

---

[3] Although the district court dismissed Doe's complaint without prejudice, the order is final and "appealable because the district court dismissed the complaint and directed that the case be closed." *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 615 (4th Cir. 2020).

F.3d 634, 639 (4th Cir. 2020); *see also Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018) (reviewing legal question of qualified immunity de novo). In doing so, we "apply[] the same standard as for motions made pursuant to Rule 12(b)(6)," "view[ing] the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Conner v. Cleveland Cnty.*, 22 F.4th 412, 420 (4th Cir. 2022) (quoting *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019)).

## III.

On appeal, Doe contends that the district court erred when concluding that qualified immunity barred her constitutional claims. We disagree.

### A.

"Qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Adams*, 884 F.3d at 226 (internal quotation marks omitted). The "qualified immunity analysis typically involves two inquiries: (1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015). Courts can resolve these prongs in any order they deem appropriate. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he [or she] is doing violates that right." *Adams*,

8

884 F.3d at 226 (alteration in original) (internal quotation marks omitted). "Ordinarily, to answer this inquiry, we need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose to determine whether a reasonable [official] would know that his conduct was unlawful in the situation he confronted." *Yates v. Terry*, 817 F.3d 877, 887 (4th Cir. 2016) (internal quotation marks omitted). "An official violates a clearly established constitutional right when, in the light of preexisting law[,] the unlawfulness of the actions is apparent." *Id.* (alteration in original) (internal quotation marks omitted). In assessing whether the contours of a particular right are sufficiently clear, "[w]e do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

"Courts must take care to define the right [at issue] at an appropriate level of specificity." *Thompson v. Virginia*, 878 F.3d 89, 98 (4th Cir. 2017) (internal quotation marks omitted). Although the Supreme Court has admonished courts "not to define clearly established law at a high level of generality, *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam) (internal quotation marks omitted), "a general constitutional rule . . . may apply with obvious clarity . . . even though the very action in question has not previously been held unlawful," *Thompson*, 878 F.3d at 98 (alterations in original) (internal quotation marks omitted). "Thus, officials can still be on notice that their conduct violates established law even in novel factual circumstances," so long as the law provided fair warning that their conduct was unconstitutional. *Thompson*, 878 F.3d at 98 (internal quotation marks omitted).

We are persuaded that the district court correctly determined that Appellees were entitled to qualified immunity. Specifically, Appellees did not violate clearly established law under the second prong of the qualified immunity analysis when, in response to Doe's emergency-custody admittance to UVMC after a suicide attempt, they administered psychotropic medications and sedatives in order to provide her basic medical care against her will.

At the outset, we recognize that Doe was lawfully in state custody at the time of her admittance to UVMC. Indeed, Doe concedes that she was properly brought to UVMC pursuant to § 37.2-808, which authorizes a law enforcement officer to take a person suffering a mental health episode "into custody and transport that person to an appropriate location to assess the need for hospitalization or treatment without prior authorization." Va. Code Ann. § 37.2-808(G). However, Doe claims that § 37.2-808 "is not an authorization for forcible evaluation or treatment, and it is directed at police officers, not doctors." Opening Br. 16. But the statute expressly contemplates that the individual subject to the emergency custody order may be "*unwilling* to volunteer . . . for hospitalization or treatment" and specifically provides that the officer may "*obtain[] emergency medical treatment or further medical evaluation* at any time for a person in his custody as provided in this section." Va. Code Ann. § 37.2-808(A), (I) (emphases added). In effect then, the statute permits a police officer to obtain emergency medical treatment from a medical professional for a noncompliant individual lawfully in his custody. Based on the circumstances of Doe's admittance to UVMC under this statute, we conclude that a

10

reasonable medical professional would not have understood that his or her conduct was unlawful. In fact, Doe's complaint documents that Nurse Carter affirmatively believed he was acting lawfully, as he informed Doe "that the Emergency Custody Order authorized the taking of samples and the provision of medications even if she objected." J.A. 10.

Nor would Appellees have understood their conduct to be unlawful based on constitutional principles. As state actors, Appellees had a constitutional duty to safeguard Doe as a suicidal individual lawfully in their custody. *See Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) ("[T]he due process clause mandates the provision of medical care to detainees who require it. Further, in that framework, due process calls for the taking of appropriate steps to protect detainees who manifest suicidal intent."). And that duty did not clearly prohibit them—based on their judgment as medical professionals under the circumstances of Doe's admission for attempted suicide—from medicating Doe in order to collect blood and urine samples for analysis. *See id.*; *Hogan v. Carter*, 85 F.3d 1113, 1118 (4th Cir. 1996) (concluding that a doctor was entitled to qualified immunity where he "determined, pursuant to and consistent with accepted professional judgment, that it was in Hogan's medical interest to receive the one-time dose of Thorazine [against his will] in order to protect Hogan from imminent, self-inflicted harm" (internal citation omitted)); *see also Sullivan v. Bornemann*, 384 F.3d 372, 376, 378 (7th Cir. 2004) (explaining that, in the context of an arrestee who was catheterized against his will "after he registered a high score on the breathalyzer test," "the state has a substantial interest in assuring the medical stability of its pretrial detainees" and noting that it had "little trouble" in concluding that

11

"the minimal invasion of [the arrestee's] privacy interest here is outweighed by the state's interest").[4]

In response, Doe cites several general principles suggesting that her liberty interest to decline medical treatment was clearly established. *See Cruzan ex rel. Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990) ("The principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment may be inferred from our prior decisions."); *Washington v. Harper*, 494 U.S. 210, 221–22 (1990) (recognizing mentally ill prisoner "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment"); *Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 616–17 (1989) (recognizing that drawing blood and urine samples from an individual implicates the Fourth Amendment); *Pabon v. Wright*, 459 F.3d 241, 249–50 (2d Cir. 2006) (holding "that, in order to permit prisoners to exercise their right to refuse unwanted treatment, there exists a liberty interest in receiving such information as a reasonable patient would require in order to make an informed decision as to whether to accept or reject proposed medical

---

[4] We also recognize that, had Doe suffered injury or death due to Appellees' failure to treat her in a matter compatible with her admission for attempted suicide, they likely would be facing suit from her or her estate. *See Hogan*, 85 F.3d at 1118 ("If Dr. Carter had not ordered the single dose of Thorazine that he did order, and instead delayed emergency medical intervention . . . , it is not unlikely that Dr. Carter would now be facing a lawsuit by Hogan claiming that he was deliberately indifferent to his serious medical needs."); *Sullivan*, 384 F.3d at 378 (noting that the medical professionals "could [have] be[en] sued under the Fourteenth Amendment" if they were "deliberately indifferent to [the pretrial detainee's] health"). "That [Appellees] should not be liable for taking the very action, the failure of which to take could have exposed [them] to such a lawsuit, should come as no surprise." *Hogan*, 85 F.3d at 1118–19.

treatment"). But these cases do not address—much less clearly establish—the right of a *mental health detainee* in lawful state custody to forego necessary medical examination after attempting suicide or what medical professionals may reasonably do to administer basic medical care against that detainee's will.

Moreover, Doe cannot demonstrate that, despite the lack of "a case directly on point," "existing precedent . . . placed the statutory or constitutional question beyond debate" based on our foregoing analysis of § 37.2-808 and the constitutional principles at issue. *al-Kidd*, 563 U.S. at 741. That is to say, in light of the State's duty to provide Doe medical care following her attempted suicide, we conclude that her failure to cite a case involving a mental health detainee or to otherwise demonstrate that the clearly-established nature of her liberty interest was "beyond debate" is fatal to her claims. *Id.*; *Hogan*, 85 F.3d at 1118 ("Because Hogan is unable to identify a single precedent prior to the complained of action (or, indeed, any precedent since) that even addressed the procedures constitutionally required before an antipsychotic drug may be administered to an inmate in an emergency . . . , Dr. Carter is entitled to qualified immunity[.]").

Accordingly, the district court properly determined that Appellees did not violate clearly established law when treating Doe, meaning they were appropriately entitled to qualified immunity from her claims.

## IV.

For the reasons discussed above, the judgment of the district court is

*AFFIRMED.*

13